UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

VICKIE KOHLS,

        Plaintiff,                      CIVIL ACTION NO. 15-cv-11554

        v.                             DISTRICT JUDGE THOMAS L. LUDINGTON

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Vickie Kohls seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1) Before the Court are Plaintiff's Motion for Summary Judgment (Docket no. 13) and Defendant's Motion for Summary Judgment. (Docket no. 18) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.        RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (Docket no. 13) be DENIED and Defendant's Motion for Summary Judgment (Docket no. 18) be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits with a protective filing date of July 19, 2012, alleging disability beginning July 1, 2011, due to degenerative disc disease, arthritis, diabetes, fibromyalgia, ulcerative colitis, pancreatitis, depression and panic attacks. (TR 104) The Social Security Administration denied Plaintiff's claims on December 3, 2012, and Plaintiff requested a *de novo* hearing. (TR 154-69,176) On March 10, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Scott Staller. (TR 132-153) In a July 23, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 100-109) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (Docket no. 13 at 4-8) and the ALJ (TR 102-106) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Defendant adopted the facts as stated in the ALJ's decision. (Docket no. 18 at 4.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2011 through her date last insured, December 31, 2013, and that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine, arthritis, diabetes, fibromyalgia, ulcerative colitis, neuropathy, major depressive disorder, and panic disorder with agoraphobia. (TR 102) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 102-104) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she may only occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. In addition, she can only occasionally balance, stoop, kneel, or crouch, or crawl. The claimant is able to understand, remember and carry out simple instructions, make judgments on simple work related decisions; interact appropriately with supervisors and workers in a routine work setting; interact appropriately with the public; respond to usual work situations and to changes in a routine work setting; maintain concentration and attention for two hour segments over an eight hour period; and complete a normal work week without excessive interruptions from psychologically or physically based symptoms.

(TR 104) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 107-108) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since July 1, 2011, the alleged on-set date through December 31, 2013, the date last insured. (TR 108)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

B.     **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.     **Analysis**

Plaintiff asserts that this matter should be reversed and remanded because the ALJ erred in Step Three of the sequential analysis process by not evaluating or discussing whether

plaintiff's ailments met or equaled Listings 1.02 (joint disorders), 1.04 (spine disorders), 5.06 (inflammatory bowel disease) or 9.00 (endocrine disorders).[1] (Docket no. 13 at 9-14)

At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). A claimant must satisfy all of the criteria to meet a listing, or have impairments which are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009). It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (TR 102-104) With regard to Plaintiff's physical impairments, the ALJ briefly stated that he considered Listings 1.02, 1.04, 5.06 and 9.00, and that those listings were not met. (TR 102) Although, as noted by Plaintiff, the ALJ did not analyze Plaintiff's impairments under these Listings at step three of the sequential evaluation process, "an ALJ is not required to consider

---

[1] Plaintiff admits that the ALJ adequately discussed and evaluated the evidence under Listings 12.04 and 12.06, and does not contest his findings relative to those listings. (Docket no. 13 at 10)

6

every Listing or to consider Listings that the claimant 'clearly does not meet.'" *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). The proper inquiry in this instance is whether "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing[; if so,] the ALJ should discuss that listing." *Sheeks*, 544 F. App'x at 641 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).[2] It is the claimant's burden to demonstrate that such a substantial question exists. *Id*. at 642.

### a. Listing 1.02

Listing 1.02, major dysfunction of a joint, is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02. Section 1.00 defines the term *ambulate effectively*:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

---

[2] The cases holding that an ALJ's failure to address a Listing at Step 3 is sufficient grounds for remand, *see e.g., Hill v. Comm'r of Soc. Sec.,* 2013 WL 6119326 (S.D. Ohio Nov. 21, 2013) and *Brown v. Comm'r of Soc. Sec.*, 2013 WL 3873230, *6 (N.D. Ohio July 25, 2013), cited by Plaintiff, are distinguishable from *Sheeks* and its progeny because the administrative records in those cases contained evidence implicating the unevaluated Listed Impairments.

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*, Section 1.00B2b.

> What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*Id.,* Section 1.00B2c

Plaintiff has neither argued nor cited any evidence from the record to raise a substantial question as to whether she could meet this or any other of the Listings.[3] Indeed, the undersigned's review of the record evidence reveals nothing to suggest that plaintiff cannot ambulate or use her upper extremities for gross and fine movement effectively, the requirements for meeting this listing. To the contrary, plaintiff's hearing testimony that she can shop, prepare

---

[3] Plaintiff does not develop an argument or offer any analysis with regard to how the record evidence raises a substantial question as to whether her ailments meet or equal Listings 1.02, 1.04, 5.06 and 9.00. **Error! Main Document Only.**"[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec*., 87 F. App'x 464, 466 (6th Cir. 2003). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Accordingly, Plaintiff's bare assertions with regard to Listings 1.02, 1.04, 5.06, 9.00 could be disregarded without further address. Despite Plaintiff's waiver, the undersigned will address substantively Plaintiff's argument that the ALJ erred by failing to discuss and analyze Plaintiff's ailments in relation to the aforementioned Listings.

simple meals, and take care of personal hygiene is evidence that she can effectively ambulate and use her upper extremities for gross and fine movement. (TR 142-143); 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00, 1.02. Plaintiff has failed to demonstrate that the record raises a substantial question as to whether she could qualify as disabled under Listing 1.02. Hence, the ALJ's failure to consider that listing in his step-three determination cannot constitute reversible error. Accordingly, Plaintiff's Motion should be denied with regard to this issue.

### b. Listing 1.04

Listing 1.04, disorders of the spine, include:

(…herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

  A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
  or
  B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
  or
  C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt, App. 1, Section 1.04.

As noted above, Plaintiff does not cite to this Listing and the undersigned's review does not reveal any medical opinion or records to support her meeting this Listing. (*See* Docket no. 13) Additionally, as discussed *supra*, Plaintiff has failed to establish an inability to ambulate effectively. Without more, Plaintiff's unsubstantiated argument cannot establish that the record

raises a substantial question that her impairment(s) meet the criteria of Listing 1.04 or that the ALJ erred in not specifically evaluating or discussing that Listing. Plaintiff's argument fails in this regard.

    c.  Listing 5.06

Inflammatory bowel disease (IBD) is

documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:

A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period;
or
B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6–month period:

> 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
> 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
> 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> 4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
> 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

*Id.*, Section 5.06.

  Again, Plaintiff fails to cite to, and the undersigned's review fails to reveal any medical opinion or records to document the requisite surgeries, treatments or symptoms to meet this

Listing. (TR 396-675) Accordingly, Plaintiff cannot establish a substantial question that her impairments meet the criteria of Listing 5.06 or that the ALJ erred in summarily concluding that the Listing was not met.

### d. Listing 9.00

Listing 9.00, endocrine disorders, are defined as follows:

> an endocrine gland functions abnormally, producing either too much of a specific hormone (hyperfunction) or too little (hypofunction), the hormonal imbalance can cause various complications in the body. The major glands of the endocrine system are the pituitary, thyroid, parathyroid, adrenal, and pancreas….We evaluate impairments that result from endocrine disorders under the listings for other body systems.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 9.00. For Listed Impairment purposes, serious complications from Diabetes Mellitus (DM) are evaluated under the affected body system. *Id*. For example, cardiac arrhythmias are evaluated under 4.00, intestinal necrosis under 5.00, and cerebral edema and seizures under 11.00. Diabetic peripheral neurovascular disease that leads to gangrene and subsequent amputation of an extremity is evaluated under 1.00; diabetic retinopathy under 2.00; coronary artery disease and peripheral vascular disease under 4.00; diabetic gastroparesis that results in abnormal gastrointestinal motility under 5.00; diabetic nephropathy under 6.00; poorly healing bacterial and fungal skin infections under 8.00; diabetic peripheral and sensory neuropathies under 11.00; and cognitive impairments, depression, and anxiety under 12.00. Persons with DM may experience episodes of hypoglycemia, which is an abnormally low level of blood glucose. Severe hypoglycemia can lead to complications, including seizures or loss of consciousness, which are evaluated under 11.00, or altered mental status and cognitive deficits, which we evaluate under 12.00. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 9.00 B5.

By its own terms, there is no way to meet Listing 9.00. Rather an endocrine disorder

11

defined by that Listing would be evaluated according to the complications it caused to a particular body system. As discussed, *supra,* Plaintiff does not cite to, nor does the undersigned's review reveal any medical opinion or records to document any such complication.[4] (TR 396-675) Accordingly, Plaintiff cannot establish that the record raises a substantial question that her impairment(s) meet the criteria of the Listings referenced in Listing 9.00 or that the ALJ erred in not discussing or evaluating plaintiff's conditions under these Listings.

## VI. CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (Docket no. 13) and GRANT Defendant's Motion for Summary Judgment (Docket no. 18).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

---

[4] Plaintiff's medical records note that she suffers from polyneuropathy in diabetes (TR 602), however, there is no documentation of the "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" required under the relevant Listings. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 11.14, Section 11.04.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 7, 2016         s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 7, 2016         s/ Marlena Williams
                            Acting in the absence of Lisa Barlett
                            Case Manager